J-A17008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW WEINER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| INTELYCARE, INC., ARTIS SENIOR | : | |
| LIVING, LLC, ARTIS SENIOR LIVING | : | |
| OF LOWER MORELAND, LLC, D/B/A | : | |
| ARTIS SENIOR LIVING OF | : | |
| HUNTINGDON VALLEY, ARTIS | : | |
| SENIOR LIVING MANAGEMENT, LLC, | : | |
| ARTIS SLM OF HUNTINGDON | : | |
| VALLEY, LLC, D/B/A ARTIS SENIOR | : | |
| LIVING OF HUNTINGDON VALLEY, | : | |
| ARTIS HOLDINGS, LLC, MDS HOME | : | |
| AND LAWN CARE SPECIALISTS, INC. | : | |
| D/B/A MDS, INC., BETTY-ANN | : | No. 2096 EDA 2023 |
| COKER AND JOHN DOE 1, 2, 3, 4, 5, | : | |
| 6, 7, 8, 9, AND 10 | : | |

Appeal from the Order Entered August 1, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230201103

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 10, 2024**

Matthew Weiner appeals from the order that sustained preliminary objections raising improper venue and transferred the case to Montgomery County. Since the facts indisputably establish that venue was proper in Philadelphia County pursuant to Pa.R.Civ.P. 1006(a) and (c), and the court was not presented with a Rule 1006(d)(1) *forum non conveniens* petition, we reverse and remand for further proceedings in the Philadelphia County Court of Common Pleas.

Mr. Weiner, a resident of Philadelphia County, commenced this action against Artis Senior Living, LLC; Artis Senior Living of Lower Moreland, LLC, d/b/a Artis Senior Living Of Huntingdon Valley; Artis Senior Living Management, LLC; Artis SLM Of Huntingdon Valley, LLC, d/b/a Artis Senior Living of Huntingdon Valley; Artis Holdings, LLC; and Betty-Ann Coker (collectively "Artis Defendants"), along with MDS Home and Lawn Care Specialists, Inc. d/b/a MDS, Inc.; IntelyCare, Inc.; and John Does 1 through 10. In his complaint, Mr. Weiner alleged that the defendants each had some responsibility for the injuries he sustained when he slipped, fell, and was injured while temporarily assigned to work at a nursing facility in Montgomery County in February 2021.

This was the second time that Mr. Weiner initiated proceedings to recover for these injuries. He first sued MDS and the Artis Defendants *sans* Ms. Coker in Philadelphia County in 2022 but, since none of the companies regularly conducted business there, the trial court sustained preliminary objections raising improper venue and transferred the case to Montgomery County. Through discovery conducted following the transfer, Mr. Weiner became aware of additional parties, both of which had ties to Philadelphia County. Armed with this information, he discontinued the Montgomery County action and commenced the instant action in Philadelphia County.

In addition to premises liability claims against MDS and the business-entity Artis Defendants, Mr. Weiner pled negligence claims against Ms. Coker

- 2 -

and IntelyCare, the entity that counsel for the Artis Defendants had previously identified as Ms. Coker's employer. Critically, Ms. Coker is a resident of Philadelphia County and was served with Mr. Weiner's complaint at her home.[1]

The complaint alleged as follows regarding the alleged culpability of Ms. Coker and her employer:

> 34. Defendant, [Ms.] Coker, was the supervisor of the facility during the night shift from 7 PM on February 21, 2021[,] until 7 AM on February 22, 2021[,] and had special knowledge and knew or should have known of the facility protocols applicable to persons such as [Mr.] Weiner about the presence of ice and ice removal in the parking lot.
>
> 35. Defendant, [Ms.] Coker, was negligent and careless because:
>
> (a) she failed to warn [Mr. Weiner] that the facility protocol was that the maintenance, salting, treating, and ice removal of the parking lot was only planned around shift changes, and it would be dangerous for anyone to walk in the parking lot before the 7 AM shift change because of dangerous icy conditions; and
>
> (b) she failed to use reasonable care and use adequate warnings under the circumstances.
>
> 36. At all relevant times, Defendant, [Ms.] Coker, was an employee, servant, agent, workman, ostensible agent, and/or contractor of IntelyCare, Inc., and/or the Artis Defendants and acted (or failed to act) withing the course and scope of her employment, agency, and/or authority.

---

[1] After retaining new counsel, the business-entity Artis Defendant discovered that Ms. Coker was actually their employee. *See* N.T. Hearing, 7/31/23, at 9-10 ("So once I got the case, that is the first time that defendants learned that [Ms.] Coker is actually our employee."). Mr. Weiner ultimately discontinued the action as to Ms. Coker's previously purported employer, Intelycare, after the Artis Defendants stipulated that she was employed by Artis SLM of Huntingdon Valley, LLC during the time in question.

37.  Defendants, IntelyCare, the Artis Defendants, and/or John Does (1-10) are vicariously liable for [Ms.] Coker's Negligence.

Complaint, 2/10/23, at 9-10.

Ms. Coker and the rest of the Artis Defendants filed preliminary objections to the complaint.  Therein, under the heading "Petition to Transfer Venue to Montgomery County," they stated a preliminary objection pursuant to Pa.R.Civ.P. 1006(e) to the propriety of venue in Philadelphia County.  **See** Preliminary Objections, 4/7/23, at ¶ 6.  Their proffered reason for sustaining their objection was that Mr. Weiner had no valid claim against Ms. Coker and she was improperly named as a defendant solely to establish venue.  **Id**. at ¶ 13.  In their accompanying brief, the Artis Defendants explained:

> [Mr. Weiner] became aware through discovery that [Ms. Coker] was a nurse on duty inside the facility when [he] allegedly slipped and fell outside in the parking lot.  Despite it being clear under Pennsylvania law that only the possessor of the land who has occupation of the land with intent to control it can be liable under premises liability (**See** Restatement (Second) of Torts, § 328E; **Rudy v. A-Best Products Co.**, 870 A.2d 330, 333 ([Pa.Super.] 2005); and **Gutteridge v. A.P. Green Services, Inc.**, 804 A.2d 643 ([Pa.Super.] 2002)), [Mr. Weiner] filed the instant lawsuit naming a nurse who was responsible for patient care inside the facility and was not the possessor of the land as a defendant in this action for the sole purpose of venue.  Frankly, it is unethical.

Memorandum of Law in Support of Preliminary Objections, 4/7/23, at unnumbered 3-4.

Arguing that Mr. Weiner thus had no cognizable claim against Ms. Coker, the Artis Defendants proclaimed that her ties to Philadelphia "should not be

- 4 -

considered when determining the proper venue in this case." ***Id***. at ¶ 18. Additionally, the Artis Defendants posited as follows:

> [T]he attempt to join [Ms.] Coker in the instant litigation for a Philadelphia venue, should be dismissed under *forum non conveniens*, as the law states that venue can be transferred for the convenience of the parties. Uninvolved frivolous parties that are added for the sole purpose of creating venue is improper and should not prevent the [c]ourt from transferring venue to Montgomery County. ***See Cheeseman v. Lethal Exterminator, Inc.***, 701 A.2d 156, 162 (Pa. 1997)[,] and Pa.R.C[iv].P. 1006(d)(1); ***Hartman v. Corporate Jet, Inc.***, 60 Pa. D. & C. 4th 431 (Phila. Cty. 2001).

***Id***. at ¶ 17.

In his answer, Mr. Weiner maintained that venue was proper in Philadelphia County because one of the jointly-liable defendants was served there. ***See*** Answer to Preliminary Objections, 4/25/23, at ¶ 14. Observing that the preliminary objections did not include a demurrer pursuant to Pa.R.Civ.P. 1028(a)(4), he contended that the legal sufficiency of the complaint's negligence allegations against Ms. Coker were thus waived. ***Id***. at ¶¶ 13, 15. Mr. Weiner asserted that the invocation of *forum non conveniens* was irrelevant, as a motion to transfer venue on that basis cannot be raised by preliminary objection. ***Id***. at ¶ 17 (citing Pa.R.Civ.P. 1028(a)(1), *Note* ("Of the three grounds available to challenge venue, only improper venue may be raised by preliminary objection as provided by Rule 1006(e). *Forum non conveniens* and inability to hold a fair and impartial trial are raised by petition as provided by Rule 1006(d)(1) and (2).")). Further, he decried the objecting

defendants' "scurrilous and outrageous attack on the ethics of [Mr. Weiner] and his counsel." *Id*. at ¶ 18.

On May 3, 2023, the Artis Defendants moved for Ms. Coker's dismissal based on an affidavit of non-involvement, invoking Pa.R.Civ.P. 1036. Therein, they maintained their argument that Mr. Weiner's claims that Ms. Coker was negligent in failing to advise him of facility protocols were not viable because she was not a possessor of the premises. *See* Motion to Dismiss, 5/3/23, at ¶ 13. Mr. Weiner filed a response correctly highlighting that the Rule 1036 had no applicability. *See* Pa.R.Civ.P. 1036(a) (indicating that the Rule pertains to actions "subject to an Act of Assembly which provides for dismissal of the action as to a party based upon an affidavit of noninvolvement"); *id*. at *Note* ("Actions pursuant to the following Acts of Assembly are within the scope of this rule: . . . an action for negligence against a construction design professional and . . . a medical professional liability action naming a health care provider as a defendant.").

The trial court issued a rule to show cause why the venue objection should not be sustained and scheduled a hearing. At the outset of that proceeding, the trial court indicated that its desire was to gain "an understanding as to the basis of Ms. Coker and her position in this lawsuit." N.T. Hearing, 7/31/23, at 4. The court asserted that this Court's precedent allowed it to examine "the complaint and determine whether all the parties in

front of [it] are proper, notwithstanding the -- there is no filing of a demurrer as to her claims." *Id*. at 5.

Mr. Weiner's counsel proceeded to offer the following explanation:

[MR. WEINER'S COUNSEL]: . . . [Mr. Weiner] filed a -- [he] is -- works for an agency. He is a certified nursing assistant. He was assigned temporarily to this nursing home facility; he hadn't been there very long. So he shows up and he does not work -- he works for an agency, he is not an employee of the facility. Ms. Coker improperly gave him instructions about what he needed to do and the safety protocols of the facility. We learned that in -- at the beginning of discovery in Montgomery County.

In fact, the defendant said that my client was comparatively negligent because my client went outside during his shift to take out the trash and move his car. And the only way you -- and that was against facility protocol.

The reason why it was against facility protocol or one of the reasons is because this is a fall down on ice and snow. They schedule the landscaping -- the snow removal to be done at the time of this shift changes.

Therefore, no one should be in the parking lot during the shift changes because they can't ensure that they are continually salting and removing ice and snow.

He was not told that. They -- the defendant raised this and said my client was told that and he shouldn't -- he should have known not to go out and take out the trash and move his car. He goes out and takes out the trash and moves his car. It's dark, he slips and falls. It just so happens to be the landscaping company was there removing snow and he didn't know it. They hadn't finished yet, and he shattered his leg, Your Honor.

. . . .

And they didn't demur, Your Honor. So they waived any right to this. This isn't summary judgment. This is not even proper to -- to be -- to be analyzing this because this is not a summary judgment.

- 7 -

. . . .

THE COURT: Okay. So tell me again the -- you discovered -- how did you discover -- and what was her instruction? Was it --

[MR. WEINER'S COUNSEL]: Her instruction was you need to take out the trash. One of your duties -- he gets there and she says these are your duties. One of the duties was you need to go outside and take out the trash and throw it in the dumpster.

She didn't tell him that you are supposed to do it right before the shift ends because during cold days where there's snow on the ground and ice, they don't -- they schedule the snow removal and ice removal to coordinate right before shift changes. He goes out in the middle of his shift because the trash was overflowing. He throws it in the -- he walks to the dumpster, he moves his car, and he gets out of his car and falls on a patch of ice. The snow removal company was in the parking lot removing ice. But he -- snow and ice. But he didn't know it because he wasn't told about this protocol.

So in the answer to interrogatories, they blame plaintiff and said he -- he didn't follow protocol. That's why he's at fault.

So --

THE COURT: Okay.

[MR. WEINER'S COUNSEL]: So how could he not follow protocol? He needs to be told what protocol is.

*Id*. at 5-9.

In response, counsel for the Artis Defendants avowed their position that

Ms. Coker was not a "proper defendant in this case" based upon:

an affidavit of noninvolvement by the executive director of Artis Senior Living really laying out the facts that she is not a possessor of the land as required under Pennsylvania law for premises liability to attach to this defendant. She was not responsible for monitoring the weather outside. She has no control or intent to control a parking lot outside. Her duty was to supervise patients and other employees inside the building of the nursing home as a

- 8 -

nurse supervisor. She has no control over what an employee does outside in the parking lot.

You know, I agree that [Mr. Weiner's counsel] could bring suit based on the premises that he was -- plaintiff slipped and fell outside the parking lot. But, you know, he brings this against the Artis Senior Living defendants and the lawn care defendant. [Ms.] Coker has absolutely no involvement in this case.

*Id*. at 11.

The trial court took the matter under advisement. Later that day, it entered separate orders: (1) denying the Rule 1036 motion to dismiss Ms. Coker from the case, and (2) sustaining the preliminary objections and transferring the case to Montgomery County. Mr. Weiner filed a timely notice of appeal on August 7, 2023, and both he and the trial court complied with Pa.R.A.P. 1925.

Mr. Weiner presents the following question for our determination:

Where venue is presumptively proper under Pa.R.Civ.P. No. 1006(e), may the trial court rely only on the complaint to decide that a party on whom venue is based should not have been named and transfer venue without making any Rule 1006(d) analysis as required by *Zappala I* and *Cheeseman* that the defendants met their burden in (1) establishing that the present venue is burdensome and oppressive and (2) that the plaintiff's inclusion of the dismissed defendant in the case was **designed** to harass the other defendants?

Mr. Weiner's brief at 3 (emphasis in original).

We begin with a review of the applicable law. A trial court's ruling as to venue "will not be disturbed on appeal absent an abuse of discretion." *Hangey v. Husqvarna Prof'l Products, Inc.*, 304 A.3d 1120, 1141 (Pa. 2023). In this vein:

- 9 -

An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record. An appellate court cannot find an abuse of discretion simply because it might have reached a different conclusion; if there exists any proper basis for the trial court's decision . . . the decision must stand.

*Id*. (cleaned up). Nonetheless, to the extent we must address questions of law, "our standard of review is *de novo* and our scope is plenary." *Id*.

A "[p]laintiff's choice of forum is entitled to weighty consideration and should not be disturbed lightly." *Zappala v. Brandolini Prop. Mgmt., Inc*. ("*Zappala I*"), 909 A.2d 1272, 1281 (Pa. 2006). However, while "a plaintiff, as a rule, may cho[o]se the forum in which to bring suit, that right is not absolute." *Id*. The establishment or proper venue and the procedures for seeking a change thereof are governed by Pa.R.Civ.P. 1006, which provides as follows in pertinent part:

**(a) General Rule**. Except as otherwise provided by subdivisions (b) and (c) of this rule, an action against an individual may be brought in and only in a county where

(1) the individual may be served;

(2) the cause of action arose;

(3) a transaction or occurrence took place out of which the cause of action arose;

(4) venue is authorized by law; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

**(b) Venue Designated by Rule**. Actions against the following defendants, except as otherwise provided in subdivision (c), may be brought in and only in the counties designated by the following rules: . . . corporations and similar entities, Rule 2179.[2]

**(c) Joint and Several Liability Actions**. An action to enforce a joint or joint and several liability against two or more defendants, except actions in which the Commonwealth is a party defendant, may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules of subdivisions (a) or (b).

**(d) Transfer of Venue**.

(1) For the convenience of parties and witnesses, the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought.

(2) If, upon petition and hearing, the court finds that a fair and impartial trial cannot be held in the county for reasons stated of record, the court may order that the action be transferred. The order changing venue shall be certified to the Supreme

---

[2] Rule 2179 provides that, as a general rule, actions against corporations and similar entities may be brought only in a county where:

(1) the registered office or principal place of business of the corporation or similar entity is located;

(2) the corporation or similar entity regularly conducts business;

(3) the cause of action arose;

(4) a transaction or occurrence took place out of which the cause of action arose; or

(5) the property or a part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.Civ.P. 2179(a).

Court, which shall designate the county to which the case is to be transferred.

(3) It shall be the duty of the prothonotary of the court in which the action is pending to forward to the prothonotary of the county to which the action is transferred, certified copies of the docket entries, process, pleadings, depositions, and other papers filed in the action. The costs and fees of the petition for transfer and the removal of the record shall be paid by the petitioner in the first instance to be taxable as costs in the case.

**(e) Improper Venue to be Raised by Preliminary Objection**. Improper venue shall be raised by preliminary objection and if not so raised shall be waived. If a preliminary objection to venue is sustained, and there is a county of proper venue within the State, the action shall not be dismissed but shall be transferred to the appropriate court of that county. The costs and fees for transfer and removal of the record shall be paid by the plaintiff.

Pa.R.Civ.P. 1006.

As for the timeframe pertinent to the analysis, "the venue rules exclusively address where venue properly may be laid at the time the suit is initiated." *Hausmann v. Bernd*, 271 A.3d 486, 493 (Pa.Super. 2022) (cleaned up). "Thus, [the] question of improper venue is answered by taking a snapshot of the case at the time it is initiated: if it is proper at that time, it remains proper throughout the litigation." *Zappala I*, 909 A.2d at 1281.

Preliminary objection "is the exclusive method to challenge venue as 'improper.'" *Id*. Further, of the various "grounds available to challenge venue, only improper venue may be raised by preliminary objection[.]" *Id*. at 1272 (cleaned up) (quoting Pa.R.Civ.P. 1028, *Note*). Pursuant to Rule 1006(d), the other bases for contesting the plaintiff's venue choice are

premised upon (1) the doctrine of *forum non conveniens*, and (2) the contention that a fair and impartial trial is impossible in the current forum.

Relevant to the instant case, a Rule 1006(d)(1) *forum non conveniens* challenge "may be invoked at any time" by petition. **Id**. As our High Court has explained:

> The considerations guiding a court's ruling on a Rule 1006(d)(1) petition are entirely different from those regarding a Rule 1006(e) preliminary objection. Substantively, the doctrine of *forum non conveniens* provides that a court may resist imposition upon its jurisdiction, even when jurisdiction is authorized by the letter of a general venue statute. **See Cheeseman v. Lethal Exterminator, Inc.**, 701 A.2d 156, 160 (Pa. 1997). When addressing a petition to transfer venue pursuant to Rule 1006(d), a trial court, giving the required deference to plaintiff's chosen forum, is faced with the question of whether a transfer of venue of a properly filed action to a court in another county is appropriate. In **Cheeseman**, we held that a petition to transfer venue pursuant to Rule 1006(d)(1) should not be granted unless the defendant meets its burden of demonstrating, with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant. The defendant may show that the plaintiff's choice of forum is vexatious by:
>
> > establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. Alternatively, the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him.
>
> Unlike the analysis implicated by Rule 1006(e), a Rule 1006(d)(1) motion has little to do with whether the plaintiff's choice of forum is technically proper at the outset, because even if it is, the trial

court is still vested with discretion to transfer the action to another county if the defendant meets his burden of proving that the forum is oppressive or vexatious.

*Id*. at 1282–83 (cleaned up).

This Court addressed the application of ***Cheesman*** to a Rule 1006(d)(1) motion alleging improper forum shopping in ***Zappala v. James Lewis Grp.*** ("***Zappala II***"), 982 A.2d 512, 519 (Pa.Super. 2009), the appeal following the remand of ***Zappala I*** to the trial court. Therein, we observed:

> Pennsylvania does not forbid "forum shopping" *per se*—to the contrary, our venue rules give plaintiffs various choices of different possible venues, and plaintiffs are generally free to "shop" among those forums and choose the one they prefer. There may be quite appropriate reasons for a plaintiff to seek a certain forum—for example, a forum might, as here, be closer to the office of plaintiff's attorney, or closer to a transportation center. As a result, the mere invocation of that phrase "forum shopping" does not trigger such a talismanic effect as to cause an abrupt termination of the inquiry

*Zappala II*, 982 A.2d at 520-21 (cleaned up). Rather, it is only **improper** forum shopping that is disapproved. "[I]mproper forum shopping occurs when a plaintiff manufactures venue by naming and serving parties who are not proper defendants to the action for the purpose of manipulating the venue rules to create venue where it does not properly exist." *Id*. at 521. In such circumstances, "the trial court may interfere with the plaintiff's choice of forum on *forum non conveniens* grounds," upon a defendant's filing of a Rule 1006(d)(1) petition "and meeting the evidentiary burden established in ***Cheeseman***." *Id*. at 521, 524. In other words, we held that when "the defendants that provided the basis for plaintiff's choice of forum are

- 14 -

subsequently dismissed from the case, the remaining defendants who seek transfer pursuant to Pa.R.C[iv].P. 1006(d)(1) have the burden of proving that the plaintiff's inclusion of the dismissed defendants in the case was **designed** to harass the remaining defendants." **Id**. at 521 (Pa.Super. 2009) (emphasis in original).

From this discussion of the governing law, it is plain that the trial court erred in sustaining the preliminary objection to venue. Although Ms. Coker was served in Philadelphia, the court ruled that it "is an improper venue for [her] because [Mr. Weiner] has no actionable claim against [her]." Trial Court Opinion, 12/22/23, at 4. The court's belief that our decisions in **Zappala II** and **Fessler v. Watchtower Bible & Tract Soc'y of New York, Inc.**, 131 A.3d 44 (Pa.Super. 2015),[3] allowed it to decide a Rule 1006(e) objection by deciding whether Ms. Coker should have been named as a party is wholly unfounded. Both of those cases involved *forum non conveniens* petitions to transfer venue pursuant to Rule 1006(d)(1), and in both we reversed the trial court's decision to grant the petitions because the evidence of record did not support a finding that a Philadelphia defendant was named solely to harass the other defendants. **See Fessler**, 131 A.3d at 53; **Zappala II**, 982 A.2d at 525. This precedent offered no authority for the court's decision to delve

---

[3] **See** N.T. Hearing, 7/31/23, at 4-5 ("And there's certainly cases where I believe it's appropriate and the Superior Court agrees with me, **Fessler** one of them, **Zappala** is another[.]"); Trial Court Opinion, 12/22/23, at 6.

- 15 -

into the factual and legal sufficiency of the claim pled against Ms. Coker when it was presented not with a demurrer, but solely a Rule 1006(e) objection.

On appeal, the Artis Defendants offer ***Silva v. Philadelphia Yearly Meeting***, 239 A.3d 107, 2020 WL 4334047 (Pa.Super. 2020) (non-precedential decision), as authority for their position that a preliminary objection to venue may be sustained where venue is proper, but only due to the naming of a "sham-defendant who does not belong in the case [and was named] for the sole purpose of manufacturing venue[.]" Artis Defendants' brief at 11-12. We are not persuaded by the ***Silva*** decision. Insofar as it conflated an improper forum shopping Rule 1006(d)(1) petition with a Rule 1006(e) preliminary objection to improper venue, and approved the trial court's decision to rule upon a venue objection by assessing the evidence of the forum defendant's liability, we find the ***Silva*** decision unsupported by precedent and inconsistent with the decisions in ***Zappala I*** and ***Zappala II***.

The ***Zappala*** cases involved the naming of forum defendants "whose connection to the case was tenuous at best" and who were ultimately dismissed without opposition because "they did not have an ownership interest or responsibility in the land where the accident occurred[.]" ***Zappala II***, 982 A.2d at 516-17. Nonetheless, as we discussed above, ***Zappala I*** affirmed that venue was proper because a forum defendant was named in the case, and ***Zappala II*** reversed the trial court's decision to grant the subsequent Rule 1006(d)(1) petition to transfer venue because no evidentiary

record existed to support a *Cheeseman*-based finding that the forum shopping was improperly designed to harass the non-forum defendants.

Here, Mr. Weiner has yet to concede the non-viability of his claims against Ms. Coker, no record has been developed to decide the issue, and he has proffered legitimate reasons for desiring to litigate his claims in Philadelphia, which is where he and other witnesses reside, where he received medical treatment, and where his lawyer's office is located. *See* Appellant's reply brief at 22. Pursuant to the governing precedent, resolution of the preliminary objections should have been a simple matter. Ms. Coker was served in Philadelphia. Hence, Rule 1006(a) renders venue proper in Philadelphia County as to her, and venue is proper as to the rest of the defendants pursuant to Rule 1006(c).

If the objecting defendants wish to pursue the claim that Mr. Weiner's decision to litigate in his home county was improper forum shopping, or is otherwise oppressive or vexatious, they must raise it by petition pursuant to Rule 1006(d)(1), and the court must decide in accordance with the principles enunciated in *Cheeseman* and *Zappala II*. In the meantime, the court's decision to accept the defendants' proposal to short-circuit the process and sustain Rule 1006(e) preliminary objections in the face of proper venue must be reversed.

Order reversed. Case remanded for further proceedings in Philadelphia County. Jurisdiction relinquished.

Judge Nichols joins this Memorandum.

Judge Sullivan files a Concurring Statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/10/2024